United States District Court
Southern District of Texas
**ENTERED**
January 06, 2022
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## MCALLEN DIVISION

DELFORD BERNARD MATHEWS,　　§
　　Plaintiff,　　　　　　　　　　§
　　　　　　　　　　　　　　　　§
VS.　　　　　　　　　　　　　　　§　　CIVIL ACTION NO. 7:21-00305
　　　　　　　　　　　　　　　　§
SUSANA AMANDA ROMO,　　　　　§
　　Defendant.　　　　　　　　　　§

### REPORT AND RECOMMENDATION

Plaintiff, Delford Bernard Mathews (TDCJ #1122268), a state prisoner proceeding *pro se* and *in forma pauperis* ("IFP"), filed a complaint pursuant to 42 U.S.C. § 1983 against Susana Romo, a Captain at the Willacy County State Jail in Raymondville, Willacy County, Texas (the "Willacy Unit"). In the complaint, Delford Mathews alleges that Susana Romo subjected him to racial discrimination in violation of his Fourteenth Amendment right to equal protection of the law and that Susana Romo violated his First Amendment right to free speech through retaliation while incarcerated at the Willacy Unit. (Dkt. No. 1-1 at 1, 4-5.) The case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b).

After reviewing the record and applicable law, the undersigned recommends that Plaintiff's § 1983 claims against Defendant be **DISMISSED with prejudice** for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### I. BACKGROUND

**A. Claims Presented**

1

Plaintiff is serving an eight-year prison sentence due to a conviction for delivery of a controlled substance out of Fort Bend County, Texas.[1]  As part of that sentence, Plaintiff was assigned to the LaSalle Corrections' facility called the Willacy County State Jail.[2]  The Willacy County State Jail is a private facility that contracts with the Texas Department of Criminal Justice, Correctional Institutions Divisions ("TDCJ") to house state inmates.[3]  Plaintiff's complaint (Dkt. No. 1) and memorandum in support of said complaint (Dkt. No. 1-1) were received and filed in federal court on August 11, 2021.  Petitioner also attached as an exhibit to these two documents Petitioner's Step 1 and Step 2 Offender Grievance Forms.  (Dkt. No. 1-2.)  Plaintiff subsequently filed an Application to Proceed *In Forma Pauperis* (IFP).  (Dkt. No. 5.)  Plaintiff was granted leave to proceed IFP on October 7, 2021.  (Dkt. No. 8.)  The same day, the undersigned filed an Order for More Definite Statement, asking Plaintiff to clarify his allegations.  (Dkt. No. 7.)  On October 28, 2021, Plaintiff filed his More Definite Statement.  (Dkt. No. 9.)  The individual defendant is Susana Romo, a Captain at the Willacy Unit.

---

[1]   Texas Department of Criminal Justice (TDCJ), *Inmate Information Details*, https://inmate.tdcj.texas.gov/InmateSearch/viewDetail.action?sid=05047732 (last visited January 5, 2022).

[2]   At the time of filing suit, it appears Plaintiff was still assigned to Willacy County State Jail in Raymondville, Texas.  In a filing from September 2021, Plaintiff sets forth a return address of Teague, Texas.  (Dkt. No. 5-1.)  A review of the Texas Department of Criminal Justice's website sets out that Plaintiff's current assigned unit is the Boyd Unit.  TDCJ, *Inmate Information Details*, https://inmate.tdcj.texas.gov/InmateSearch/viewDetail.action?sid=05047732 (last visited January 5, 2022).  The William R. Boyd Unit is a state prison located in Teague, Texas.  TDCJ, *Unit Information*, https://www.tdcj.texas.gov/unit_directory/unit_information.html (last visited January 5, 2022).

[3]   While the Willacy Unit is privately operated by LaSalle Corrections, the Willacy Unit is contracted with the Texas Department of Criminal Justice, which is an "instrumentality of the state" of Texas.  *See* TDCJ, *Private Facility Contract Monitoring/Oversight Division – Contracted Facilities*, https://www.tdcj.texas.gov/divisions/pf/pf_unit_list.html (last visited January 5, 2022); *Thornton v. Merch.*, 342 F. App'x 10, 11 (5th Cir. 2009).  "[P]rivate prison-management corporations and their employees may be sued under § 1983 by a prisoner who has suffered a constitutional injury." *Rosborough v. Mgmt. & Training Corp.*, 350 F.3d 459, 461 (5th Cir. 2003).  Therefore, Plaintiff may raise § 1983 claims against Defendant, in her official and individual capacities.

A *pro se* petitioner is entitled to a more liberal construction of his filings as *pro se* pleadings are held to less stringent standards than those drafted by practicing attorneys. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Peña v. United States*, 122 F.3d 3, 4 (5th Cir. 1997) ("Because [Plaintiff] is *pro se*, [the Court will] construe his pleadings liberally."). Accordingly, the undersigned finds Plaintiff asserts two constitutional claims. The undersigned liberally construes Plaintiff's first claim to be an allegation that Defendant, Susana Romo, a correctional facility captain, violated his Fourteenth Amendment right to equal protection by: (a) singling him out in the hallway to accuse him of being out of place, allegedly due to his race, and (b) treating him unfairly by telling officers to order Plaintiff to stop working and return back to his housing area, allegedly because of his race and her perceptions about African American versus Hispanic workers. (Dkt. No. 1-1 at 4-5.) Plaintiff's second claim is that Captain Romo violated his First Amendment right to submit grievances by retaliating against him after he submitted two grievances, stating he felt racially discriminated against. *Id.* at 4. The mental and emotional anguish Plaintiff allegedly has suffered include feelings of depression, discouragement, feeling like he is "less than" a person or man, and low self-esteem among his peers. *Id.* at 5.

Mathews seeks a declaratory judgment against Captain Romo for violating Plaintiff's civil rights, injunction orders prohibiting LaSalle Corrections staff[4] from any retaliation, discrimination, harassment, and unequal treatment of inmates within their private prison's operation[5], punitive damages of $1 million and monetary damages of $5 million for mental and emotional anguish. (Dkt. No. 1-1 at 3.)

---

[4] Plaintiff has only joined one member of the staff, Captain Romo. Therefore, the Report and Recommendation will only address that Defendant, noting the Court cannot grant Plaintiff relief against those LaSalle Corrections staff members not included in this suit.

[5] *See supra* n.3.

3

**B. Step 1 & 2 Grievance Forms from June 2020**

On or about June 25, 2020, Plaintiff filed his Step 1 grievance form. (Dkt. No. 1-2 at 2.)
In Plaintiff's Step 1 grievance form, Plaintiff asked TDCJ to investigate why he was sent home by
Captain Romo for allegedly talking to other inmates and to determine if Captain Romo was racially
discriminating against him. *Id.* at 1. Plaintiff wrote he would like to return to work and be given
his job back without any retaliation. (Dkt. No. 1-2 at 2.) Assistant Warden P. Arguijo ("Assistant
Warden") replied that there was not enough evidence to substantiate Plaintiff's claim against
Captain Romo. *Id.* Assistant Warden also stated, "On 06-24-20 all of broom squad crew was sent
home until all pill window and laundry traffic was clear. After walkways were clear[,] broom
squad crew was called out to refill water coolers." *Id.* Assistant Warden wrote that no further
action was warranted on the matter. *Id.*

On or about July 23, 2020, Plaintiff filed his Step 2 grievance form. (Dkt. No. 1-2 at 4.)
In Plaintiff's Step 2 grievance form, Plaintiff asserted, "[I]nmates . . . had no right to be there on
my card to work. Also, they continue to work both cards and I am no longer called out." *Id.* at 3.
Plaintiff repeated his prior assertion that Captain Romo's stated reason for sending Plaintiff home
was because she caught him speaking to other inmates. *Id.* Plaintiff requested that "the entire
process for grievances here in Willacy be investigated for fabricating statements to hold up to
quote, 'taking care of our own!'" *Id.* He also requested that officials stop workers from working
on a shift not assigned to them. *Id.* Lastly, Plaintiff asked for protection from retaliation or ill will
towards him for "addressing a major issue here on Willacy [U]nit." *Id.* The staff's response to
Plaintiff's Step 2 grievance was the same as the response to Plaintiff's Step 1 grievance—the
broom squad was sent back to housing until the traffic was clear from the hall and the broom squad
was then called back to fill water coolers. (Dkt. No. 1-2 at 3.)

4

On August 11, 2021, Mathews filed his complaint (Dkt. No. 1) and memorandum in support of said complaint (Dkt. No. 1-1).  In Petitioner's Memorandum In Support for Complaint for Violation of Civil Rights 42 USC – 1983 ("Plaintiff's Memo"), Plaintiff provides more details of his racial discrimination and retaliation claims, as detailed below.

### C.  Allegations of Racial Discrimination

In Plaintiff's Memo, Plaintiff raises an equal protection claim based on alleged racial discrimination against him.  Plaintiff alleges the following facts in support of this claim: "Hispanic and/or Mexican American [s]taff dominate the facility without any 'Black' correctional staff, especially in security and/or African American staff [sic]."  (Dkt. No. 1-1 at 4.)  Petitioner is an African-American inmate and Defendant is (according to Plaintiff) Hispanic.  *Id.*  Plaintiff states that he "believe[s] that [Captain] Romo's actions are rooted in discrimination for the color of my skin, merely being a Black Man [sic]."  *Id.* at 5.  Plaintiff notes, he is "much more darker [sic] than most African American inmates [sic]."  *Id.*  Plaintiff also asserts, "As clearly stated in my Step One Grievance 'I feel racially' diversed favoritism [sic]."  *Id.*  "Hispanic inmates are often (said by staff) expressed to be [h]ard [w]orkers and allowed better jobs, while Black inmates are lazy, too talkative, and loud; only 'traffic and trading' at work assignments [sic]."  *Id.*  Plaintiff believes staff would never admit to these allegations and "only seek to evade them by some justification(s)."  (Dkt. No. 1-1 at 5.)  Finally, Plaintiff states he is a victim of an equal protection violation "at the hand [sic] of Captain Romo at LaSalle Corrections" due to not being treated the same as others similarly situated.  *Id.* at 6.

Based on the above factual allegations, Plaintiff's racial discrimination claim was unclear, therefore, the undersigned ordered a More Definite Statement.  *See* Dkt. No. 7.  In this Order, the undersigned asked Plaintiff to detail: (1) any instances of Defendant's harassment due to his race,

(2) any acts of racial discrimination by Defendant, (3) any ways Defendant unfairly treated Plaintiff due to his race, (4) how Defendant was involved with the allegation that other inmates are 'working on [his] card' or 'working both cards', and (5) how Defendant was treating Plaintiff differently than others in prison. *Id.* at 1-2, ¶¶ 1-3, 5-6, 9.

In Mathews' More Definite Statement, Mathews responds to the request for a list of encounters with Defendant that he would describe as involving racial harassment by pointing to an incident on July 2, 2020. On that date, Plaintiff claims that while he was on his way to school he asked Captain Romo, "Why or what have I did [sic] to you to have so much hate for me?" (Dkt. No. 9 at 1, ¶ 1.) Her response was "something like y'all look suspicion and then life [sic]." *Id.*

Plaintiff's response to the inquiry about encounters with Captain Romo involving racial discrimination is that on October 29, 2020 at around 10:30 a.m., Plaintiff talked to Captain Romo about getting his job back on broom squad. *Id.* ¶ 2. Captain Romo asked why Plaintiff lost his job in the first place. *Id.* Plaintiff told Captain Romo that she took his job, to which she responded, "[W]ell did you have disciplinary?" *Id.* Plaintiff said no, he did not, so Captain Romo told him to write to Ms. Parmer[6] on an I-60 form. (Dkt. No. 9 at 1, ¶ 2.) Plaintiff filled out the form and Ms. Parmer replied that his job was denied due to his recent disciplinary record. *Id.* at 1-2, ¶ 2. Plaintiff asserts Ms. Parmer's explanation "was a lie" and that later Plaintiff found out Ms. Parmer and Captain Romo were "very good friends." *Id.* at 2, ¶ 2.

In response to the inquiry regarding unfair treatment due to his race, Plaintiff states that on December 13, 2020 and December 17, 2020, Plaintiff, after speaking with Ms. Parmer about jobs and learning he should get "Sgt. K. Rod to sign off on the I-60," followed instructions to do so,

---

[6] The undersigned does not know Ms. Parmer's title or role at the Willacy Unit, however, from the context of Plaintiff's assertions, Ms. Parmer appears to be a staff member involved in matching prisoners with employment opportunities.

6

but Plaintiff was denied for every job he sent in for "due to [Captain] Romo." *Id.* ¶ 3. "So [Plaintiff] tried to move to the dormitory [Captain Romo] block[ed] that so [Plaintiff] went to the chaplain to move to the faith base[d] dormitory [Captain Romo] couldn't stop that." *Id.*

Plaintiff points to other purported unfair treatment allegedly due to his race, stating that other Lieutenants, Sergeants, and Officers request Plaintiff to do work for them and like what he does, however, Captain Romo "always [has] something to say or turn her nose up on me and some of the Sgts. and officers [sic] tell me that she don't like me and don't want me working but just stay out of her way [sic]." (Dkt. No. 9 at 3, ¶ 5.)

In response to questions about Defendant's racial discrimination against Plaintiff, Plaintiff points to two ways Captain Romo treats Plaintiff differently than other inmates: (1) Other inmates "are cool" with Captain Romo and can go to her about moving between jobs "without issues," but Plaintiff cannot do the same because he does not speak or understand Spanish; and (2) "Just about all the Hispanic[s] can go to [Captain Romo] with a problem and she will look into it, or go to her about a job she help them get it [sic] but if [Plaintiff] or a black [sic] go to her she always have an attitude and will not help or want to talk." (Dkt. No. 9 at 3, ¶¶ 6, 9.)

**D. Allegations of Retaliation**

In Plaintiff's Memo, Plaintiff also argues he is a victim of retaliation for "grieving various unit issues and/or problems for voicing my opinions." (Dkt. No. 1-1 at 4.) Further, Plaintiff makes a related harassment claim that "[Captain] Romo feels the need to select me out from other inmates in the hallway and stop me merely to accuse me of being 'out of place' or having no business in certain parts of the prison when in fact [he has either] official lay-in or business going and coming." *Id.*

Regarding retaliation for Plaintiff's two filed grievances, Plaintiff points to an incident that occurred on August 5, 2021 around 10:00 a.m. when Plaintiff had a job with the prison laundry group. (Dkt. No. 9 at 2, ¶ 4.) On this day, Plaintiff was taking a burger to his "suppl[y] boss" ("boss")[7] and ran into his boss and Captain Romo talking in the hall. (Dkt. No. 9 at 2, ¶ 4.) Plaintiff stopped to wait for his boss, and as Plaintiff was waiting, Captain Romo "turn[ed] on [Plaintiff] and said oh you m—f— I hope you like your [j]ob because you [won't] have it for long m—f— you going to write grievances on me." *Id.* This allegedly occurred in front of Plaintiff's boss. *Id.* "When [Plaintiff] started back to work in the laundry [Plaintiff] stop[ped] by [ ] Captain Romo['s] office to ask what did [he] do [sic], to which she replied, '[Y]ou think you going to write grievances on me and get away I got you [sic].'" *Id.* According to Plaintiff, Captain Romo called his boss and told said boss that Plaintiff no longer worked with the laundry group. *Id.* Following the instructions of his boss, Plaintiff went into work on August 6, 2021 and worked until 12:00 p.m. (Dkt. No. 9 at 2, ¶ 4.) At around 5:30 p.m. that same day, Plaintiff got a job change and a "move lay-in,"[8] so he filed an "L.I.D."[9] on Captain Romo. *Id.* at 3, ¶ 4.

Regarding further questions about retaliation, Plaintiff states that after he filed Step 1 and Step 2 grievances, Captain Romo kept Plaintiff from getting back on "broom squad." *Id.* ¶ 7. Plaintiff says he knows Captain Romo blocked him from broom squad with the intent to retaliate

---

[7] It appears "supply boss" is in reference to another prison official whom Plaintiff was assigned to work for; as will be set forth, Plaintiff claims Captain Romo re-assigned Plaintiff from this job assignment.

[8] A lay-in is "a written leave of absence from an assigned program or activity for a specific purpose and time period." TDCJ, *Definitions & Acronyms*, https://www.tdcj.texas.gov/definitions/index.html.

[9] Plaintiff does not explain what an "L.I.D." is and the undersigned did not find any plausible definition for this acronym, however, in context, the "L.I.D." is assumed to be another form of a grievance. The lack of information regarding this acronym is inconsequential to the analysis and reasoning provided in this Report and Recommendation.

8

against him because "[Captain] Romo block[s] [Plaintiff] from getting jobs that officers would want [Plaintiff] to have and Sgts. and officers telling [Plaintiff] [Captain] Romo not letting [him] get a job [sic]." *Id.* ¶ 8.

## II. APPLICABLE LAW AND ANALYSIS

### A. Prisoner Litigation Reform Act

Pursuant to the Prison Litigation Reform Act (PLRA), the Court shall dismiss a case at any time if the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune to such relief. 28 U.S.C. § 1915(e)(2)(B).[10]

A claim is frivolous if it is "devoid of all arguable merit," or, in other words, lacks a basis in law or fact. *Williams v. Scheef*, 824 F. App'x 268, 270 (5th Cir. 2020) (citing *Eason v. Thaler*, 14 F.3d 8, 10 (5th Cir. 1994)); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999). A complaint lacks an arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Johnson v. Wainwright*, No. 2:19-CV-341, 2020 WL 5919733, at *2 (S.D. Tex. Feb. 24, 2020), *report and recommendation adopted in part*, No. 2:19-CV-341, 2020 WL 4365546 (S.D. Tex. July 30, 2020) (quoting *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998)). Accordingly, when a complaint raises an arguable basis in law, yet lacks sufficient facts, dismissal under the PLRA failure to state a claim standard is appropriate; however, dismissal under the

---

[10] "In the PLRA, Congress added failure to state a claim and seeking monetary relief from a defendant immune from such relief as grounds for *sua sponte* dismissal of *in forma pauperis* cases, § 1915(e)(2)(B) (2000 ed.) . . . ." *Jones v. Bock*, 549 U.S. 199, 214 (2007); *see also* 42 U.S.C. § 1997e(c)(1). A plaintiff proceeding *in forma pauperis* is subject to PLRA screening. *See Ruiz v. United States*, 160 F.3d 273, 274 (5th Cir. 1998).

PLRA frivolousness standard is not. *See Scheef*, 824 F. App'x at 269-270. "When a complaint is facially frivolous and insubstantial, it is insufficient to invoke the jurisdiction of a federal court." *Dilworth v. Dallas Cnty. Comm'ty College Dist*., 81 F.3d 616, 617 (5th Cir. 1996) (citations omitted).

To survive a § 1915(e)(2)(B)(ii) dismissal for failure to state a claim, a complaint "must contain sufficient factual matter accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *see also Johnson*, 2020 WL 5919733, at *3. A court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged" for the claim to have facial plausibility. *Iqbal,* 556 U.S. at 678. The plausibility standard requires a plaintiff to plead factual content that shows "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "When reviewing a complaint for failure to state a claim, the Court may also consider documents attached to the complaint as exhibits. *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."). Importantly, a *pro se* petitioner is entitled to a more liberal construction of his filings, as *pro se* pleadings are held to less stringent standards than those drafted by practicing attorneys. *See Haines*, 404 U.S. at 520; *Peña*, 122 F.3d at 4. However, "*pro se* plaintiffs must still plead factual allegations that raise the right to relief above the speculative level." *Coleman v. United States*, 912 F.3d 824, 828 (5th Cir. 2019).

## B. Official Capacity Claims and Monetary Damages

To the extent Plaintiff sues Defendant in her official capacity as a state actor, the Eleventh Amendment entitles Defendant to immunity from claims for monetary damages. *See Prescott v.*

*Pace*, No. 3:18-CV-0378, 2018 WL 6386216, at \*3 (S.D. Tex. Dec. 6, 2018) (citing *Mayfield v. Tex. Dep't of Crim. Justice*, 529 F.3d 599, 604 (5th Cir. 2008)).

"[P]rivate prison-management corporations and their employees may be sued under § 1983 by a prisoner who has suffered a constitutional injury." *Rosborough v. Mgmt. & Training Corp.*, 350 F.3d 459, 461 (5th Cir. 2003). A claim against a private prison official in his or her official capacity is a claim against the prison facility, operating as an "instrumentality of the state," and thus a claim against the State of Texas. *See Thornton v. Merch.*, 342 F. App'x 10, 11 (5th Cir. 2009). Unless a state consents to be sued, either by waiving its sovereign immunity or Congress's clear abrogation of a state's immunity, then a federal court is without jurisdiction over suits against a state, state agency, or state official in his or her official capacity. *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 393-94 (5th Cir. 2015). "Texas has not consented by statute, and § 1983 does not abrogate state sovereign immunity." *Id.* at 394 (citing *Quern v. Jordan,* 440 U.S. 332, 340 (1979)). Further, a plaintiff is not entitled to punitive damages from either the state or a state official sued in an official capacity as neither are considered a "person" under § 1983. *Stauffer v. Gearhart*, 741 F.3d 574, 583 (5th Cir. 2014) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989); *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002)).

However, "[s]uits by private citizens against state officers in their official capaci[ies] are not . . . categorically barred." *Fontenot v. McCraw*, 777 F.3d 741, 752 (5th Cir. 2015). A plaintiff seeking injunctive relief against a state actor is not suing the state, but rather, a private person subject to suit. *NiGen Biotech*, 804 F.3d at 394. The same reasoning applies to declaratory relief. *Lecompte v. University of Houston System*, 535 F. Supp. 317, 320 (S.D. Tex. 1982) (citation omitted). Further, a plaintiff can seek punitive damages against an official in his or her personal capacity "when the defendant's conduct is shown to be motivated by evil motive or intent, or when

11

it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade,* 461 U.S. 30, 56 (1983); *see also Simmons v. Hays County Sheriff's Dept,* 552 F. App'x 348, 349 (5th Cir. 2014); *Williams v. Kaufman County,* 352 F.3d 994, 1015 (5th Cir. 2003).

Accordingly, Captain Romo, in her official capacity, is a state actor immune from claims seeking *only* monetary damages, however, Defendant is not immune from claims seeking declaratory relief or injunctive relief. Since Plaintiff's claims seek both monetary and punitive damages as well as declaratory and injunctive relief from Defendant, the undersigned will analyze all claims against Captain Romo in her official capacity, while noting that Defendant, in her official capacity, is entitled to immunity from monetary and punitive damages. *See* 18 U.S.C. § 1915(e)(2)(B)(iii) (claims shall be dismissed when a plaintiff proceeding *in forma pauperis* is seeking "monetary relief from a defendant who is immune from such relief"). Captain Romo, in her individual capacity, is not entitled to this same immunity from monetary and punitive damages. *See Smith,* 461 U.S. at 56.[11]

### C. Official Capacity Claims

First, as established, Plaintiff cannot claim monetary damages from Captain Romo in her official capacity. *See* discussion *supra* Section II.B. Further, "[b]ecause the real party in interest in an official-capacity suit is the governmental entity and not the named official, 'the entity's 'policy or custom' must have played a part in the violation of federal law.'" *Hafer v. Melo,* 502

---

[11] Section 1997e(e) of Title 42, which "applies to *all federal civil actions* in which a prisoner alleges a constitutional violation, [makes] compensatory damages for mental or emotional injuries non-recoverable, absent physical injury." *Hutchins v. McDaniels,* 512 F.3d 193, 196 (5th Cir. 2007) (quoting *Geiger v. Jowers,* 404 F.3d 371, 373 (5th Cir. 2005) (emphasis original)). Plaintiff has alleged no physical injury; therefore, to the extent the requested $5 million is for *compensatory* damages for mental and emotional anguish, it is non-recoverable. *Id.* (noting that "failure to allege any physical injury precludes [plaintiff's] recovery of any compensatory damages for emotional or mental injuries suffered."). However, if Plaintiff stated a plausible claim and successfully proved Defendant violated his constitutional rights, then Plaintiff could recover *nominal* or *punitive* damages. *Id.* at 198 (emphasis added). Yet, as is detailed in this Report and Recommendation, Plaintiff does not state any plausible claims and cannot recover damages.

U.S. 21, 25 (1991) (citation omitted) (quoting *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694 (1978)).

Plaintiff does not provide factual allegations involving any state policy or custom. Plaintiff solely argues Defendant's own racial animus towards Plaintiff resulted in the alleged claims. Since Plaintiff's accusations are solely based on the acts of Captain Romo, acting under color of state law, Plaintiff's claims are properly raised against Captain Romo in her individual capacity. As such, because Plaintiff failed to allege a predicate constitutional violation, the official capacity claims should be dismissed with prejudice for failure to state a claim. 18 U.S.C. § 1915(e)(2)(B)(ii).

### D. Race Discrimination Claims in the Employment Context

As a preliminary matter, Plaintiff's alleged facts regarding his prison work assignments demonstrate that Plaintiff's § 1983 equal protection claim should be considered in the context of employment discrimination. *See* facts *supra* Section I.C. Although not the only means of establishing a prima facie case of racially motivated employment discrimination under § 1983, the *McDonnell Douglas* factors, primarily used in Title VII Civil Rights cases, are one way a plaintiff may assert an equal protection claim. *Lee v. Conecuh Cty. Bd. of Ed.*, 634 F.2d 959, 962–63 (5th Cir. 1981). Although "[i]t is true that the Supreme Court has held that the *McDonnell Douglas* standard does not govern at the motion-to-dismiss stage," the Fifth Circuit has "recognized that *McDonnell Douglas* may still be used to frame the motion-to-dismiss inquiry."[12] *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1210 (5th Cir. 2021) (citing *Swierkiewicz v. Sorema N.A.*, 534

---

[12] As explained above, screening a *pro se* prisoner's cause of action under the PLRA is akin to the motion-to-dismiss stage of litigation. *See* PLRA legal standard *supra* Section II.A.

U.S. 506, 510 (2002); *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013); *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) (quotations omitted as to each citation)).[13]

Accordingly, the *McDonnell Douglas* factors are: "(i) that [a plaintiff] belongs to a racial minority; (ii) that [a plaintiff] applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite [a plaintiff's] qualifications, [the plaintiff] was rejected; and (iv) that, after [the plaintiff's] rejection, the position remained open, and the employer continued to seek applicants from persons of complainant's qualifications." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), holding modified by *Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993).

## E. Claim Against Captain Romo, in her Individual Capacity, Regarding Race Discrimination

Mathews, in support of his allegation that Captain Romo racially discriminated against him, points to the following: (1) an incident where Defendant called him "suspicious," (2) an incident where Plaintiff was sent home allegedly due to him and another inmate talking, (3) a time when he confronted Defendant about getting his broom squad job back and Defendant and Ms. Parmer both cited Plaintiff's inability to return to his job as the fault of his recent disciplinary record, (4) the allegation that Defendant "blocked" Plaintiff from every prison job to which he applied and "blocked" Plaintiff's relocations into certain dormitories, and (5) the allegation that Defendant gets along with other non-African-American inmates better than him because Defendant wants to help them or talk to them without an attitude (which she purportedly does not

---

[13] The Fifth Circuit cautioned the courts, however, stating, "a court errs when it 'require[s] a plaintiff to plead something more than the "ultimate elements" of a claim,' or 'inappropriately heightens the pleading standard by subjecting a plaintiff's allegations to rigorous factual or evidentiary analysis under the *McDonnell Douglas* framework in response to a motion to dismiss.'" *Scott*, 16 F.4th at 1210 (quoting *Cicalese*, 924 F.3d at 767).

do with African-American inmates).   (Dkt. No. 1-2 at 1; Dkt. No. 9 at 1-3, ¶¶ 1-3, 6, 9.)

Additionally, Plaintiff argues Lieutenants, Sergeants, and Officers will get Plaintiff to do work and

"like what he does," however, Captain Romo will "always have something to say or turn her nose

up on [him] and some of the Sgts. and officers tell [Plaintiff] that [Captain Romo] do[es]n't like

[him] and do[es]n't want [him] working but just stay out of her way [sic]."  *Id.* at 2, ¶ 5.  In other

words, Plaintiff relies on his subjective belief that since it "was a lie" that he and another inmate

were talking, that it "was a lie" that he had a recent disciplinary record (without explanation of

why), and broom squad could not have been sent home due to hallway traffic as the Step 1 and

Step 2 grievance responses allege, the reason Plaintiff was sent home *had* to have been due to the

color of his skin.

Sparse and conclusory allegations are not sufficient to state a claim for relief.  *Fountain v.*
*Rupert*, 819 F. App'x 215, 219 (5th Cir. 2020) (citing *Coleman v. Lincoln Par. Det. Ctr.*, 858 F.3d
307, 309 (5th Cir. 2017)).  A "sheer possibility" that a defendant may be liable for the conduct
alleged is not enough to survive a PLRA screening.  *See Iqbal*, 556 U.S. at 678; *see also* PLRA
legal standard *supra* Section II.A.  "Allegations of subjective views, without supporting factual
allegations, do not give rise to an inference of intentional discrimination . . . ."  *Mandawala v.*
*Baptist Sch. of Health Pros.*, No. SA19CV01415JKPESC, 2020 WL 5250642, at *3 (W.D. Tex.
Sept. 3, 2020), *appeal dismissed sub nom. Mandawala v. Ne. Baptist Hosp., Counts 1, 2, & 11*,
No. 20-50785, 2020 WL 8816470 (5th Cir. Nov. 13, 2020) (citing *Byers v. Dallas Morning News,*
*Inc.*, 209 F.3d 419, 427 (5th. Cir. 2000)).

Considering Plaintiff's allegations in the light most favorable to Plaintiff, there is not
enough evidence to infer beyond a "sheer possibility" that Plaintiff was sent home from his duties
because of his race.   Plaintiff has only presented conclusory and "threadbare" allegations,

providing no sufficient details about how Captain Romo's actions were racially motivated. *See generally* Dkt. Nos. 1, 1-1, 9; *see also Iqbal,* 556 U.S. at 678.

Racial discrimination could not be inferred either. To the extent the *McDonnell Douglas* factors may be used to inform an initial inquiry, Plaintiff does not provide sufficient facts to raise a claim. Plaintiff solely asserts he is African American, never stating how Captain Romo was selecting non-African-American inmates to work jobs for which Plaintiff was qualified for and to which he applied. And, to the extent Plaintiff alleges he is unable to obtain employment because Defendant is discriminating against him, the record contradicts him. Although it may be true that Captain Romo does not *want* Plaintiff working, the very fact that she is perturbed Plaintiff was or is *still* working demonstrates that Plaintiff's allegation that he is unable to get a job is contradicted by the facts he presents for review. *See* Dkt. No. 9 at 2, ¶ 5.

In addition, Plaintiff alleges he applied for certain jobs and did not get them. However, despite the undersigned's urging in the Order for More Definite Statement for Plaintiff to explain how Defendant ever racially discriminated against him, Plaintiff did not give any details that would allow a reasonable person to infer that Plaintiff's allegations of being sent to his cell from work or becoming victim to Defendant's "attitude" were products of Defendant's race-based acrimony. Therefore, the undersigned recommends the racial discrimination claim against Captain Romo in her individual capacity be dismissed with prejudice for failure to state a claim. 18 U.S.C. § 1915(e)(2)(B)(ii).

## F. Claim Against Captain Romo, in her Individual Capacity, Regarding Retaliation

"[A] prison official may not retaliate against or harass an inmate . . . for complaining to a supervisor about a guard's misconduct. [This] is a claim of constitutional proportions which is actionable under § 1983 . . . ." *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995) (hereinafter

*Woods*).  To prevail on a constitutional retaliation claim, a plaintiff prisoner must show: (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation.  *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998).  A plaintiff can meet this standard by producing direct evidence of retaliatory motivation or through a timeline of events from which retaliation may be inferred. *Woods*, 60 F.3d at 1166; *see also Garcia v. Gonzalez*, 478 Fed. App'x. 928, 929 (5th Cir. 2012). Also, a plaintiff must prove that the retaliatory adverse act would not have been taken by the defendant "but for" the defendant's retaliatory motive.  *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019).

As an initial matter, the undersigned accepts that Plaintiff is alleging a specific constitutional right, his ability to exercise his First Amendment rights without facing retaliation.[14] *See Bibbs v. Early*, 541 F.3d 267, 271-72 (5th Cir. 2008).

## G. Defendant's Intent to Retaliate Against Plaintiff

Plaintiff claims Captain Romo's "intent to retaliate against him" is evident from the fact that Plaintiff is unable to obtain a prison job.  (Dkt. No. 9 at 3, ¶ 8.)  The record, however, precludes Plaintiff's argument.  Plaintiff submitted Step 1 and Step 2 grievance forms on June 25, 2020 and July 23, 2020.  (Dkt. No. 1-2 at 2, 4.)  At the time of Plaintiff's grievances, Plaintiff requested a return to the broom squad.  (Dkt. No. 1-2 at 2.)  In Plaintiff's More Definite Statement, however, Plaintiff describes an incident on August 5, 2021 when Plaintiff was working for the laundry group. (Dkt. No. 9 at 3, ¶ 4.)  Plaintiff further describes that he "got a job change and a 'move lay-in,'" not that he was fired from all jobs.  *Id.* ¶ 4.  Thus, Plaintiff's assertion that Captain Romo prevents

---

[14] "A prison inmate is entitled to his First Amendment right to freedom of expression so long as it is not inconsistent with his status as a prisoner and does not adversely affect a legitimate state interest." *Jackson v. Cain*, 864 F.2d 1235, 1248 (5th Cir. 1989) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).

or prohibits Petitioner from working is contradicted by the facts Plaintiff submitted in support of his claim. Even assuming Plaintiff's assertions are true, Plaintiff is not unable to get a job, he has merely been subject to job transfers.

Although Plaintiff fails to articulate a direct basis for retaliation when asked, a timeline of events that may point to retaliatory motivation is the one alleged to have occurred on August 5, 2021 and August 6, 2021.[15] (Dkt. No. 9 at 3, ¶ 4.) Plaintiff described that Defendant cussed at him in the hall, saying "[O]h you m—f— I hope you like your [j]ob because you [won't] have it for long m—f— you going to write grievances on me." *Id.* Later that day, Plaintiff stopped by Captain Romo's office to see why she was upset with him. *Id.* In response to said inquiry, Captain Romo stated, "[Y]ou think you going to write grievances on me and get away I got you [sic]." *Id.* The next day, Plaintiff received notification of a "move lay-in," which meant Plaintiff would be subject to a job transfer. *Id.*

Even if Plaintiff demonstrates that Defendant had a retaliatory motive and this alleged retaliatory motive was the "but for" cause of Plaintiff's August 2021 job transfer, Plaintiff did not show the retaliatory act was more than *de minimis*, a requirement for a proper retaliation claim, as discussed below.

## H. The Alleged Retaliatory Adverse Act is *De Minimis*

"The 'retaliatory adverse act' [in a retaliation claim] must be 'more than *de minimis* retaliation.'" *Turner v. Cain*, 647 F. App'x 357, 361 (5th Cir. 2016) (citing *Morris v. Powell*, 449 F.3d 682, 684-85 (5th Cir. 2006)). "Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Bibbs*,

---

[15] Of note, however, is this incident occurred over a year from when Plaintiff first filed his grievances in June and July of 2020. *See* Dkt. No. 1-2 at 2, 4.

541 F.3d at 270 (citing *Morris*, 449 F.3d at 686). The focus of a retaliation claim is on the "obstruction of the exercise of a constitutional right." *Woods*, 60 F.3d at 1165.

"There is no question that [a] prison official ha[s] the general authority to reassign ... [a plaintiff] to new work." *Bibbs*, 541 F.3d at 271 (quoting *Jackson v. Cain*, 864 F.2d 1235, 1248 (5th Cir. 1989)). And generally, mere reassignment of prison jobs is *de minimis*. *Turner*, 647 F. App'x at 362 (citing *Morris*, 449 F.3d at 687).[16]

"This general authority[,] however, can be exceeded." *Bibbs*, 541 F.3d at 271 (citing *Jackson*, 864 F.2d at 1248). An example of this exception would be if a plaintiff were moved to a "punishment crew." *See Jackson*, 864 F.2d at 1247 (where a plaintiff, after filing grievances, was moved to a "punishment crew"). In *Jackson*, the plaintiff was forced to work unmasked "in a barn shoveling unshucked corn . . . contaminated with rats' nests, insects, and clods of white, sandy dust." *Id.* at 1239. "His nose bled, his hair fell out, and his face broke out in sores." *Id.* Jackson was later reassigned to this same "punishment crew" after being treated with antibiotics for syphilis, "even though such exposure to sunlight and heat is directly contrary to the treatment for the disease." *Id.* In such instances, if a prison official "could have transferred ... [plaintiff] to any job for almost any reason or no reason at all, [then] he would have had no claim." *Bibbs*, 541 F.3d at 271 (citing *Jackson*, 864 F.2d at 1248 n.3). *However*, where such a job transfer "may be arbitrary, it may not be retaliatory against ... [plaintiff's] exercise of constitutional rights, and

---

[16] Although it is true that the Supreme Court, in dicta, noted state employees are protected from "even an act of retaliation as trivial as failing to hold a birthday party for a public employee ... when intended to punish her for exercising her free speech rights," the Fifth Circuit has not followed this statement, which is not controlling. *Jackson v. Texas S. Univ.*, 997 F. Supp. 2d 613, 642 n.24 (S.D. Tex. 2014) (quoting *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 75 n.8 (1990)); *see also Texas S. Univ.*, 997 F. Supp. 2d at 642 n.25 ("We choose not to read the Supreme Court dicta literally; rather, we apply the main analysis of *Rutan* to retaliation claims and require more than a trivial act to establish constitutional harm." (quoting *Pierce v. Tex. Dept. of Crim. Justice, Institutional Div.*, 37 F.3d 1146, 1150 n.1 (5th Cir. 1994))).

while it may be punishment it may not be in excess of the prison's own guidelines or without minimal due process." *Id.*

In support of Plaintiff's assertion that his retaliation claim is more than *de minimis*, Plaintiff cites *Parker v. Carpenter*, 978 F.2d 190, 192-93 (5th Cir. 1992). While it is true the *Parker* case provides an example of a retaliation claim—holding that transferring an inmate to a more violent section of the prison is more than *de minimis*—Plaintiff's claim is factually distinguishable from the *Parker* case. *See id.* Plaintiff solely alleges he was subject to multiple job transfers, not that he was transferred to a more violent section of his prison. *See* Dkt. No. 9 at 3, ¶ 4. Even assumed to be true, this is the precise type of claim legal precedent would consider a claim of "inconsequential retaliation." *Morris*, 449 F.3d at 687 ("The [job] transfers may have had a retaliatory motive, and Morris may have experienced discomfort for a few days as a result, but there is no evidence that the job transfers were more than *de minimis*.").

Nor did Plaintiff allege facts akin to the degree of the "punishment crew" described in *Jackson*. In *Jackson*, the Fifth Circuit reversed the trial court's granting of summary judgment and held that Jackson, a Louisiana state prisoner, had raised "an issue of material fact regarding the motives behind the prison authorities' decision to switch him from his Capitol detail job to a job on Jenkins' crew." *See* 864 F.2d at 1248. As described above, the latter was a harsher position than the Capitol detail job originally assigned to Jackson. In reaching this holding, the Court noted that Jackson claimed the switch was in retaliation for exercising his First Amendment rights in connection to a prison complaint lodged by Jackson while Prison officials claimed the switch was due to unsatisfactory job performance. *Id.* Such a factual dispute was both sufficient and materially relevant enough to allow the claim to survive summary judgment. Here, Plaintiff alleged that Defendant retaliated against him by removing him from broom squad and later

20

prevented him from obtaining other jobs to Plaintiff's liking.   Plaintiff has pleaded no facts demonstrating punishment to more than a *de minimis* degree.   Further, "a prisoner has no constitutionally protected interest in . . . a specific work assignment."   *Bibbs*, 541 F.3d at 271 (citing *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir. 1996)); *Bulger v. U.S. Bureau of Prisons*, 65 F.3d 48, 49 (5th Cir. 1995) ("[P]risoners have no constitutionally protected liberty or property interests per se in their prison job assignments." (citing *Jackson*, 864 F.2d at 1250)).   Plaintiff's alleged injuries are insufficient to raise a retaliation claim.

Because Plaintiff's alleged retaliatory adverse acts are *de minimis*, Plaintiff cannot state a constitutional retaliation claim against Defendant in her individual capacity.   Accordingly, the undersigned recommends Plaintiff's job-transfer claim be dismissed with prejudice for failure to state a claim.  18 U.S.C. § 1915(e)(2)(B)(ii).

## CONCLUSION

### *Recommended Disposition*

After a careful review of the filings, record, and relevant law, and for the reasons set forth above, the undersigned recommends Plaintiff's § 1983 claims be **DISMISSED with prejudice**. Plaintiff, using only conclusory allegations, failed to state a racial discrimination claim.  Further, Plaintiff's job-transfer retaliation claim is *de minimis* and, as such, does not raise a constitutional claim.

### *Notice to the Parties*

Within 14 days after being served a copy of this report, a party may serve and file specific, written objections to the proposed recommendations.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  Failure to file written objections to the proposed findings and recommendations contained in this report within 14 days after service shall bar an aggrieved party from de novo review by the

District Court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the District Court, except on grounds of plain error or manifest injustice.

The Clerk shall send a copy of this Order to Plaintiff.

**DONE** at McAllen, Texas, this 6th day of January, 2022.

Juan F. Alanis
United States Magistrate Judge